IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-00334 |
| | ) | |
| SMITH & DEW, INC., *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The defendants William L. Smith, Wesley A. Dew, and Smith & Dew, Inc. (collectively

Smith & Dew or defendants) own real property in fee simple in Covington, Virginia.   The chain

of title for defendants' properties includes a 1969 deed by which A. A. McAllister and Sons'

Company, Inc. granted an easement to the United States to build the road known as Forest Service

Road (FSR) 339 (the Easement Deed or the Deed).   The road, which is unpaved and

approximately 1.4 miles long, allows access from Covington to U.S. Forest Service property.

The road ends at a cul-de-sac at the edge of the George Washington National Forest where there

are hiking trails and other land available to the public for recreational uses.   Since the time the

road was built, it has been open to the public, allowing pedestrian traffic year-round and allowing

vehicular traffic seasonally.   At certain times of the year, the Forest Service has placed a gate at

the road's entrance, secured by a padlock, in order to prohibit vehicular traffic.   Primarily, the

closures occur to protect the road from damage caused by vehicles, particularly during the winter

months.

After defendants purchased essentially all the property on either side of FSR 339, they

grew frustrated with some members of the public who used the right-of-way to engage in

unwanted or illegal behavior, including dumping, shooting guns, and vandalizing defendants' property.   In an attempt to prevent this type of activity, Smith & Dew erected a locked gate in October 2013 to block vehicular access to the road, although they gave a key to the Forest Service. After defendants refused requests by the Forest Service to unlock and remove their gate, the United States filed this lawsuit.

The complaint contains three counts.   Count I is an action to quiet title.   Count II, titled "ejectment," seeks an order requiring Smith & Dew to remove the gate.   Count III seeks injunctive relief in the form of a declaration stating that defendants have no right to block access, either by the Forest Service or the public, to FSR 339; damages attributable to defendants' unauthorized use of FSR 339; and a permanent injunction enjoining defendants from placing or allowing any gate over FSR 339 that restricts the Forest Service's or public's right of access to the National Forest.

After discovery, the United States filed a motion for summary judgment, which was fully briefed and argued before the court on March 14, 2018.[1]   For the reasons set forth herein, the court will grant the motion for summary judgment and enter judgment in favor of the United States.

## I.   BACKGROUND

The court construes the evidence, and reasonable inferences therefrom, in the light most favorable to defendants, the non-moving parties.   *Laing v. Fed. Express Corp.*, 703 F.3d 713, 714 (4th Cir. 2013).

---

[1]   After the original round of briefing, the court granted defendants' request for additional discovery pursuant to Federal Rule of Civil Procedure 56(d).   Supplemental briefing occurred thereafter.   Defendants have incorporated all of their arguments from their original brief into their "supplemental" memorandum and added some additional arguments and information based on the new discovery.

## A.  The Easement Deed

As noted, the easement at issue was conveyed to the United States in 1969.   The Easement Deed contains several provisions potentially relevant here, which are discussed in context below. *See infra* Section II.C.

Defendants' primary argument is that the easement has been extinguished because its intended purpose never came into existence.[2]   That is, they argue that documents produced in discovery suggest that FSR 339 was originally intended to be part of a larger project, known as the "Skyline Road Project."   According to the limited documents still available from that time period, it appears that the Forest Service either considered a plan or actually intended for FSR 339 to be extended into the National Forest and join with a network of roads (including two "loop roads") on the National Forest property.   Dew also has offered a declaration in which he states that, based on his personal knowledge, he was aware of the "Skyline Road project" during the 1967–1971 time-frame and that it was "slated to involve providing vehicular access to a remote and roadless area of the National Forest."   (Dew Decl. ¶ 4, Dkt. No. 46-3.)   He further avers that the project "never happened," "came to an abrupt halt" in the early 1970s, and "was abandoned for reasons [he does] not know."   (*Id.* ¶ 8.)

## B.  Historical Use of FSR 339

Although FSR 339 never was connected to any larger project, it has—since its construction shortly after the easement was granted—provided access to the boundary of the National Forest. It is undisputed that the road had been used not only by the Forest Service, but also by the public,

---

[2]     In motions filed after the summary judgment motion was briefed and argued, the United States argued that the defendants' claim that the easement has been extinguished is a compulsory counterclaim; that such a claim was never pleaded by defendants as a counterclaim; and that, even if the court were to allow amendment of the pleadings to allow defendants to assert such a counterclaim, it would be barred by a twelve-year statute of limitations set forth in the Quiet Title Act, 28 U.S.C. § 2409a.   (Dkt. Nos. 51–54.)   In light of the court's resolution of the claims herein, it will not address these arguments, which were made shortly before the scheduled trial date and to which defendants have not responded.

for more than forty years until Smith & Dew erected their gate in 2013. Indeed, even Smith conceded that he used the road to access the National Forest before he ever owned the contiguous property. (Smith Dep. at 28, Dkt. No. 20-7.) According to Smith's testimony, the Forest Service gate was not open when the road was first built. At some point, it was kept open for "two weeks of deer [hunting] season." It was later extended to include the primary big game season, essentially October 1 through January. (Smith Dep. 58; *see also* Sheridan Decl. 12–14.) From the time of the road's construction, the schedule for vehicular public access has been determined and controlled by the Forest Service.

Pictures of the road show a clearly visible, large sign at the entrance that says:

# PUBLIC RIGHT-OF-WAY
THRU PRIVATE LAND TO
GEORGE WASHINGTON NATIONAL FOREST
# STAY ON ROAD

(Compl. Ex. E, Dkt. No. 1-5.) As with the text above, the first and last lines of text on the sign are in a larger font than the others. Additionally, at least when it is not open, the Forest Service gate contains a sign saying, "ROAD CLOSED."

**C. Defendants' Erection of a Gate in October 2013**

After becoming aware of dumped trash, vandalism, and shooting on their property from vehicles on FSR 339, Smith & Dew sought the assistance of local law enforcement, including the Covington City police, and asked them to monitor and police the road. They repeatedly complained about the problems related to the road over a period of years. Apparently, the local authorities told Smith that patrolling the road was a Forest Service responsibility, since the Forest Service owns the road. (Smith Dep. 47–51.) The Forest Service, according to Smith & Dew, patrolled the road only infrequently, and thus had been unable to address defendants' concerns

over the nuisances and illegal activities.   In an attempt to stop those activities, Smith & Dew hired a contractor to erect a gate in October 2013.

The gate is stand-alone, *i.e.*, it is not attached to any fence, but it blocks the road just beyond the Forest Service gate already in place.   The gate is locked, and Smith & Dew gave a key to the Forest Service.   Pictures of the Smith & Dew gate show a sign hanging from it that says, "ROAD CLOSED."   Smith & Dew never obtained any written permission from the Forest Service to erect a gate, and the undisputed evidence is that the ranger who they say gave them oral permission to put up the gate did not have authority to do so.[3]   They admitted that the intent of their gate was to prohibit vehicular access by the public unless Forest Service personnel came and opened the gate for any member of the public wanting to use FSR 339.   (*See, e.g.*, Smith Dep. 75–76.)

## II.   DISCUSSION

### A.   Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the non-moving party.   *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).   In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."

---

[3]   There is some testimony by both Smith and Dew that Forest Service ranger Pat Sheridan told Dew that they could erect the gate as an alternative to the years-long process available to administratively close the road, although Sheridan denies that he said that.   This dispute of fact is not material, however.   Even if Sheridan made the statement (which the court must accept as true for purposes of summary judgment), his verbal reassurances do not constitute a statement binding on the Forest Service with regard to this real property dispute.   *See, e.g.*, Pl.'s Mem. Supp. Summ. J. 12–13, Dkt. No. 20) (explaining why).   Most notably, Sheridan had no authority to *de facto* close FSR 339 without following the proper regulatory process and had no authority to bind the Forest Service as to the erection of the gate.

*Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

Pure questions of law, such as the interpretation of an unambiguous deed, are particularly well-suited to resolution on summary judgment. *Bailey v. Town of Saltville*, 691 S.E.2d 491, 493 (Va. 2010) (explaining that the nature of an interest in land conveyed by deed is a question of law); *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (noting that where a state's law renders the interpretation of a contract a question of law, "summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence"). *See also Sun Yung Lee v. Clarendon, L.P.*, 453 F. App'x 270, 278 (4th Cir. 2011) (holding that issues involving the possible creation of an easement in a deed of partial release involved "pure questions of law which are well within the parameters reserved for the district court on a motion for summary judgment").

## B. Parties' Arguments

The parties agree that Virginia law applies to the court's construction and interpretation of the Easement Deed. The United States argues that the Easement Deed unambiguously conveyed

a permanent easement to the Forest Service to use FSR 339, providing both Forest Service and public access to the National Forest. Because defendants' estates are subservient and the Forest Service has the dominant estate pursuant to the Easement Deed, the gate—which burdens the dominant estate in a manner inconsistent with the easement—must be removed. (*See generally* Dkt. No. 20.)

In response, defendants assert that there are disputes of material fact that preclude summary judgment. They advance three arguments in support of their position that they were entitled to erect, and are entitled to maintain, the locked gate. (*See generally* Dkt. No. 46.) First, they argue that the easement conveyed in the Easement Deed was extinguished and terminated when its purpose—which defendants say was to provide a through road as part of the now-abandoned "Skyline Road Project"—ceased to exist. They rely heavily on "[t]he Easement Deed's reference to the Skyline Road Project, documents produced by the United States, and the Dew Declaration" to argue that disputes of fact exist on this issue. (Dkt. No. 46 at 11.)

Second, Smith & Dew claim that even if the easement is valid, the gate does not violate the easement because it is a reasonable use of the servient estate that does not materially interfere with the Forest Service's use of the easement. As part of this argument, defendants argue both that the easement road is not a public road because the Easement Deed does not manifest an intent to grant perpetual public access and that their gate is a reasonable use of the servient estate.

Third and finally, they contend that, even if the easement is valid, the gate is lawful under Virginia statutory law, specifically Virginia Code § 33.2-110(C).

In its supplemental memorandum, the government stands by its initial position that the Easement Deed is unambiguous and that the court need not look outside the four corners of the deed to resolve this case. But assuming *arguendo* that the deed is ambiguous, the United States

nonetheless contends that there is no genuine issue of material fact based on admissible evidence produced in discovery. (Dkt. No. 45 at 1.)

The court addresses each of defendants' three arguments in turn.

## C. Interpretation of the Easement Deed

Virginia's general rules of construction for analyzing deeds are well established. First,

> [w]here the language of a deed clearly and unambiguously expresses the intention of the parties, no rules of construction should be used to defeat that intention. Where, however, the language is obscure and doubtful, it is frequently helpful to consider the surrounding circumstances and probable motives of the parties. *Harris v. Scott*, 179 Va. 102, 108, 18 S.E.2d 305, 307 (1942); *Schultz v. Carter*, 153 Va. 730, 734, 151 S.E. 130, 131 (1930).

*CNX Gas Co. LLC v. Rasnake*, 752 S.E.2d 865, 867 (Va. 2014). Thus, the court's consideration is "initially confine[d] to the four corners of the . . . deed to ascertain whether its language . . . is plain and unambiguous." *Id.* "Ambiguity" is defined as "the condition of admitting of two or more meanings, of being understood in more than one way." *Id.* (quoting *Berry v. Kinger*, 300 S.E.2d 792, 796 (Va. 1983)). The mere fact that the parties disagree over its meaning, though, does not render a document ambiguous. *Amos* v. *Coffey*, 320 S.E.2d 335, 337 (Va. 1984).[4]

The granting language in the Easement Deed (after stating the consideration ($500) and before the legal description and metes and bounds description), is:

> [T]he party of the first part [A. A. McAllister and Sons' Company] does hereby grant, bargain, sell and convey unto the United States of America and its assigns, an easement and right-of-way for highway purposes for a road to be located, constructed, operated, and maintained under the authority of the Secretary of Agriculture of the

---

[4] The court does not find ambiguity here, but where there is ambiguity, then the court may go outside the four corners of the deed, and, at that point, it is aided by a number of well-established rules of construction. These include that "the language must be construed against the grantor and in favor of the grantee." *CNX Gas Co. LLC*, 752 S.E.2d at 867 (citing *Ellis v. Comm'r*, 142 S.E.2d 531, 536 (Va. 1965)). That is, the "grantor must be considered to have intended to convey all that the language he has employed is capable of passing to his grantee." *Id.* (citing *Hamlin v. Pandapas*, 90 S.E.2d 829, 833 (Va. 1956)).

> United States and known as the Skyline Road Project Number 339,
> sixty (60) feet in width with as much additional width as may be
> necessary for cuts, fills, and drainage structures, on, over and across
> the following described premises situated in the County of
> Alleghany, State of Virginia . . . .

(Easement Deed at 2, Dkt. No. 20-1.)   Elsewhere, the Easement Deed says that the acquiring

agency is the Forest Service, United States Department of Agriculture.   (*Id.* at 3.)

It also reserves certain rights to the grantor:

> Except as otherwise limited herein, [the grantor] shall have the right
> to construct, improve, and maintain a road within the easement
> herein granted; provided such construction, improvement and
> maintenance plans are approved by and are satisfactory to the
> [grantee].

(*Id.*)   Additionally, the Easement Deed contains a cessation-of-use provision, relied upon by

defendants, which states:

> If for a period of five (5) years the Grantee shall cease to use, or
> preserve for prospective future use, the road, or any segment
> thereof, or if at any time the Regional Forester determines that the
> road, or any segment thereon, is no longer needed, the easement
> traversed thereby shall terminate.   In the event of such nonuse or of
> such determination by the Regional Forester, the Regional Forester
> shall furnish to the Grantor a statement in recordable form
> evidencing termination.

(*Id.*)

Notably, the deeds under which Smith & Dew obtained their property in fee simple also

reference the Forest Service easement and note that the conveyance is subject to the United States'

easement.   (Dkt. No. 20-3 (2004 deed conveying certain real property to Smith & Dew, Inc. and

containing language that certain tracts are conveyed in fee simple, "but SUBJECT to the

easements and rights granted to the United States of America by the Grantor by instrument dated

September 15, 1969, of record in said Clerk's Office in Deed Book 191, at Page 184"); Dkt. No.

20-4 (2005 deed conveying certain real property to Smith & Dew and noting that the land is

subject to easement rights including the "northerly ½ of easement to U. S. Forest Service Road No. 339").)

**D.  The Deed Has Not Been Extinguished Due to Cessation of Purpose.**

As noted, defendants' first argument is that the deed has been extinguished due to cessation of purpose.   For support, defendants point both to common law and to the "cessation of purpose" provision in the deed itself, which defendants assert reflects common law principles.   In determining whether or not extinguishment has occurred, it is necessary to first determine the "purpose" of the deed, and this is where the first area of disagreement occurs.   The United States points to the fact that the Deed refers to the easement being granted for "highway purposes."   Based on this, it maintains that the purpose of the Deed was to grant public access to Forest Service property and that that purpose still exists today.   For their part, defendants focus on the designation of the road as "the Skyline Road *Project* Number 339."   (Easement Deed at 2 (emphasis added).)   Based on this reference to a "Project," defendants claim the Deed is sufficiently ambiguous to allow the court to refer to extrinsic evidence.[5]   According to them, the extrinsic evidence shows that the purpose of the road was to connect up with the larger Skyline Road Project.

Defendants' interpretation of the Deed is unsupported by its plain language.   First of all, nothing in the Deed suggests that the "purpose" of the easement was partially or solely to connect to other roads as part of the Skyline Road Project.   Instead, the granting language says that it is conveying "an easement and right-of-way for highway purposes for a road" and that the road will be "known as the Skyline Road Project Number 339."   Nowhere does the Deed say that the

---

[5]   Defendants also argue that "[c]essation of purpose analysis requires a court to look at the language used in the Easement Deed *as well as the circumstances* surrounding the grant of an easement in order to ascertain its purpose and the drafter's intent."   (Defs.' Suppl. Mem. 7–8, Dkt. No. 46.)   But looking at the circumstances is permitted *only* where the deed is ambiguous.   *Old Dominion Boat Club v. Alexandria City Council*, 749 S.E.2d 321, 327 (Va. 2013).

purpose of the right-of-way is to connect to other roads or function as part of a larger project. The only reference to a "project" appears in the designation, or naming, of the road. Thus, even if the road was intended as part of a larger project, as some of defendants' evidence suggests, it does not affect the plain language of the Deed, which only refers to "highway purposes."

Put differently, the problem with defendants' proffered interpretation is that the Deed itself says nothing about the larger project, nor does it condition the grant on that project's coming to fruition or say that the easement is being provided for that purpose. Instead, the word "project" simply appears as part of the name of the road, a type of designation. The court agrees fully with the United States' interpretation of the Deed on this point, in which it posits that the language "'Skyline Road Project number 339' was a mere reference for familiarity purposes, and did not serve to convey any greater or lesser estate." (Pl.'s Reply 2, Dkt. No. 31.)

The court finds that the Deed is unambiguous on this point. Accordingly, reliance on the extrinsic evidence offered by defendants, such as memos and maps showing the plan for a larger project, is not permitted.[6] Defendants may well be correct that this road was originally intended to be part of a larger project that never came to fruition. Certainly, Dew has testified to that. (*See* Dew Decl. ¶¶ 4, 8.) But nothing in the Deed limits the conveyance of the access road to use for the "project," nor does the deed condition the grant of the land on the road being used for that purpose. In the clear and unambiguous absence of any such stated purpose, the court will not look beyond the face of the Deed to imply one.

While defendants cite to a number of cases in which courts applied a cessation-of-purpose analysis, most of those cases involved the grant of an easement that—in the easement deed

---

[6] Defendants point to internal Forest Service memos and one map from around 1971 (Dkt. No. 46, Exhibit A & B) in which there were references to a possible road system within the National Forest, but "the remaining portion of FDR 339" and the two loop roads subsequently were "dropped" from the transportation plan. They also rely on Dew's affidavit, in which he professes to have personal knowledge that the road was to be part of a larger road project giving vehicular access within the National Forest boundaries and that the project was abandoned.

itself—specified the purpose.   For example, in *American Oil Co. v. Leaman*, 101 S.E. 2d 540 (Va. 1958), a deed and agreement granted an easement to landowners in order for them to reach a specific road.   The local government later legally abandoned and closed the road to which access had been granted, but it built another road that provided access to the properties.   This provided a way for the easement grantees to reach their property without crossing over the easement.   Thus, the court held that the closing of the first road necessarily resulted in an extinguishment of the easement because the particular purpose for which the easement was granted ceased to exist.   *Id.* at 551–52.   But the same does not hold true here, particularly given the significant factual distinctions between this case and *American Oil*.

First of all, the *American Oil* court emphasized that the easement in that case "expressly granted" the easement "out to the public highway known as Goodwyn's Neck Road" and referenced an attached blueprint map.   *Id.* at 551.   Here, of course, nothing in the Deed itself says that the *purpose* was to link to future roads as part of a larger Skyline Project development.   As already discussed, the Easement Deed's only reference to a "Project" is in the designation or naming of the road.   Furthermore, in *American Oil*, the purpose of the easement was to give access to an existing road that was thereafter legally closed.   Here, even though other connecting forest service roads never were constructed, the easement provided—and continues to provide—a point of access for the Forest Service to reach its own lands and to allow the public to reach those lands.   Thus, no reasonable jury could find that the easement was extinguished due to cessation of purpose.

Additionally, in a more recent case addressing *American Oil*, the Supreme Court of Virginia explained that "[a]n easement's purpose depends upon the intent that can be determined from the deed granting the easement."   *Old Dominion Boat Club v. Alexandria City Council*, 749

S.E.2d 321, 327 (Va. 2013). It further emphasized that "[w]hen an easement is granted by a deed, unless it is ambiguous, 'the rights of the parties must be ascertained from the words of the deed.'" *Id.* (quoting *Gordon v. Hoy*, 178 S.E.2d 495, 496 (Va. 1971)). In *Old Dominion*, as in *American Oil*, a purpose for the easement was stated. *Id.* at 328 (describing the deed as "stat[ing] that its purpose was to provide 'free use and passage of the several Street and Alleys . . . for the more easy communication with the public main Streets and the river'").

This case is more like the situation in *United States v. Parkway Towers*, 282 F. Supp. 341 (E.D. Va. 1968), *aff'd* 405 F.2d 500 (4th Cir. 1969) (mem.) (affirming "[f]or the reasons stated in the memorandum of the District Court"). There, as here, the deed did not reserve or create an easement "for a particular purpose [such that] it would expire when the purpose ceased to exist." 282 F. Supp. at 343. Instead, the *Parkway Towers* court noted that the deed did not say that "the easement is solely for access from one parcel to the other, or that it ceases if and when access can be had from one parcel to the other by some other means . . . ." The same is true here. The grant for "highway purposes" is broad.

The Fourth Circuit adopted the reasoning from *Parkway Towers* in *Patrick County v. United States*, 596 F.2d 1186 (4th Cir. 1979). In that case, the court explained that where an easement is provided and not limited by the language of the deed, then there is no limitation and so the easement cannot be extinguished based on a cessation of purpose. *Id.* at 1191 ("[W]here an easement is reserved it may be used for any purpose to which the property for whose benefit the easement exists may reasonably be devoted, unless the reservation specifically limits the use."). Based on *Parkway Towers* and *Patrick County*, and the fact that no such limitations exist in the Easement Deed, defendants' cessation argument based on common law fails.

The cessation-of-purpose provision in the Deed itself does not rescue defendants, either. That provision states:

> If for a period of five (5) years the Grantee shall cease to use, or preserve for prospective future use, the road, or any segment thereof, or if at any time the Regional Forester determines that the road, or any segment thereon, is no longer needed, the easement traversed thereby shall terminate. In the event of such nonuse or of such determination by the Regional Forester, the Regional Forester shall furnish to the Grantor a statement in recordable form evidencing termination.

(Easement Deed at 3.)

Pursuant to its plain terms, then, there are two possible ways it could apply, but here, it is undisputed that only the first of them is potentially applicable. That is, there is no evidence of any determination by the Regional Forester that the road "is no longer needed." So, the provision could apply only if the first part of the provision applies, *i.e.*, that the Forest Service had ceased to use the road, or ceased to preserve it, for five years. But the final sentence makes clear that, even in the event of five years of nonuse (as opposed to the "determination by the Regional Forester option"), "the Regional Forester shall furnish to the Grantor a statement in recordable form evidencing termination." It is undisputed that no such statement was ever furnished. So, even if the Deed's purpose centered on a larger "project" as Smith & Dew suggest, the provision itself does not aid them.

For all of these reasons, defendants' arguments regarding extinguishment are unavailing.

## E. Defendants' Gate Is Not a Reasonable Use of the Servient Estate.

Defendants' second argument is essentially that the road is not public and was not intended to give access to the public per the terms of the Deed. Thus, while the Forest Service may use the easement, the public cannot. Given that interpretation of the easement, they contend that their gate is not an unreasonable burden on the Forest Service's use of the easement because they gave

the Forest Service a key. They cite to a number of cases where a gate was permitted to be erected by the subservient estate owner, relying on the general principle that where a non-exclusive easement is conveyed, "[t]he servient landowner retains the right to use its property in any manner that does not unreasonably interfere with the lawful dominant use." *Shenandoah Acres, Inc. v. D.M. Conner, Inc.*, 505 S.E.2d 369, 371 (Va. 1998). (*See generally* Defs.' Suppl. Mem. 15–20.)

Defendants point to three "relevant circumstances" to support that the gate is reasonable: (1) the Forest Service affixed its own locked gate, which is closed the majority of every year; (2) Smith & Dew's motivation was to prevent criminal activity occurring on its property or, at the very least, nuisances and illicit activities; and (3) Smith & Dew gave a key to the Forest Service.

The United States responds that the easement, conveyed "for highway purposes," is a public road and was used as such routinely and regularly until defendants erected their gate. The United States contends that, in addition to the fact that the easement was granted to the federal government, as opposed to a private citizen, the term "for highway purposes" is intrinsically linked to public use. For support, it cites to a *Black's Law Dictionary* definition, an Ohio case,[7] and *Prillaman v. Va.*, 100 S.E.2d 4, 8 (Va. 1957) (explaining, in context of motor vehicle violation, that highways are "open to the general public without discrimination, distinction or restriction except to regulate in order to secure to the general public the maximum benefit therefrom and enjoyment thereof").[8]

---

[7]     *Sullivan v. Columbus*, 12 Ohio Dec. 650, 652 (Ohio Ct. Common Pleas 1902).

[8]     The United States also notes that all of the conveyances to defendants of the properties around the road include explicit reference to the easement and describe it as a "Forest Service Road." The United States then cites to 36 C.F.R. § 212.6 for the proposition that all Forest Service Roads are open to the public. That regulation actually states that "use of existing National Forest System roads and trails shall be permitted for all proper and lawful purposes subject to compliance with rules and regulations governing the lands and the roads or trails to be used." In response to this argument, Smith & Dew argue that the regulations do not apply to the relationship between them and the Forest Service, but only to the Forest Service vis-à-vis the public. (Defs.' Suppl. Mem. 22 n.5.) Because the court concludes that the term "highway purposes" in the Deed clearly was intended to mean a road that could be accessed by the public, it need not refer to Forest Service regulations to resolve this case.

The court also notes other authority leading to the same conclusion. In the context of takings or condemnation jurisprudence, for example, the Supreme Court has unequivocally held that a highway purpose constitutes a public use: "That a taking of property for a highway is a taking for public use has been universally recognized, from time immemorial." *Rindge Co. v. Los Angeles Cnty*, 262 U.S. 700, 706 (1923); *id.* at 708 (recognizing that highways "to places of pleasing and natural scenery" are highways for public use). Virginia law is likewise clear that a highway is intended for public use, as evidenced by the statutory definition. Va. Code § 46.2-100 (defining a "highway" as "every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys," and including a slightly expanded definition "for law-enforcement purposes"). Thus, the very use of the term "for highway purposes" in the Easement Deed unambiguously and unequivocally conveys that it was intended to be used by the public.

Further, if the easement were to be used only as a private road by the Forest Service, that use would have been encompassed by the Deed's language granting "an easement and right-of-way . . . for a road to be located, constructed, operated and maintained" by the Forest Service. But instead, the Deed contains the words "for highway purposes." For those words to have any meaning at all, they must encompass something more than a private road to be used only by the Forest Service and the owners of the servient estate.

Moreover, it is undisputed that members of the public have used the road regularly since it was built and have driven vehicles on it when the Forest Service gate is open during big game hunting season (approximately September through January of each year). While the longstanding public use alone would not convert the road into an easement for the benefit of the public, the fact

that the easement was intended to be used as a highway—as the Deed states—is confirmed by the longstanding public use.

Further, the mere fact that the Forest Service itself limits the public's vehicular access during a portion of the year does not mean that defendants' gate is reasonable. Instead, the seasonal closing seems to fall within the *Prillaman* language that access to a "highway" can be regulated in order to maximize the public benefit of the road. *See* 100 S.E.2d at 8. That is, the Forest Service has offered undisputed evidence that it limits vehicular access during other times of the year because vehicles would cause damage to the road during the winter season. And the Forest Service's own decision to protect the road it built during certain portions of the year by restricting vehicular access does not mean that it is reasonable for defendants to prohibit such access permanently. In addition, the Forest Service has statutory authority to restrict access. *See* 16 U.S.C. § 551 (conferring on the Forest Service the authority "to regulate their occupancy and use and to preserve the forests thereon from destruction" and also to protect against destruction by fire "and depredations"); *see also* 36 C.F.R. § 261.12 (prohibiting persons from "blocking, restricting, or otherwise interfering with the use of a road, trail, *or gate*," thereby reflecting the Forest Service's ability to erect one) (emphasis added).

The court also reviewed cases addressing whether certain roads were "Virginia highways" despite restricted access to the public, most of which arose in the context of motor vehicle violations. These cases were highly fact-dependent and seemed to reach differing results, some concluding that restricted access rendered a road not a "highway" and some concluding to the contrary. *See United States v. Hill*, 473 F.3d 112 (4th Cir. 2007) (collecting authority); *United States v. Spencer*, 425 F. Supp. 2d 489 (E.D. Va. 2005) (same). But even if these cases would lead to the conclusion that FSR 339 is not a Virginia "highway" for law enforcement purposes, that

does not control the inquiry here of whether the Deed conveyed an easement that would permit the public to use the road and the Forest Service to control the public's access. Nor does it change the fact that the Easement Deed's language "for highway purposes" must be given its usual and ordinary meaning, as already discussed.

Defendants cite to a number of cases for the proposition that there can be no "presumption of public use," but those cases deal with dedication issues. (Defs.' Suppl. Mem. 12–13.) As a result, the United States counters that many of those cases are distinguishable because they did not involve easements expressly granted by deed, or granted to the government, which has no "private purpose."

Assuming dedication jurisprudence is applicable here, it does not lead to the result defendants suggest. "[A] dedication is a gift to the public," and occurs when a person with a specific property interest gifts to the public a portion of its property or a specific right to use that property in a particular way, and that gift may be either express or implied. *Id.* at 325–26. In the context of discussing implied dedication (as opposed to express dedication), Virginia courts have noted that "long use of the public of the land claimed to be dedicated" can constitute a dedication, but the intention to dedicate to public use "must be unmistakable." *Old Dominion Boat Club*, 749 S.E.2d at 326.

In many of the cases cited by defendants, there was an argument that the owner had impliedly dedicated a road for public use (or offered it for such use), but there was not express dedication in a deed. *See, e.g.*, *Dykes v. Friends of C.C.C. Road*, 720 S.E. 2d 537, 540–41 (Va. 2012) (explaining that there were "no facts . . . . indicating that the property owners or their predecessors in title ever made a formal offer to dedicate" the road to public use or of a formal acceptance of such offer by the government and thus there could only be dedication and

acceptance of dedication by implication, neither of which were supported by any additional facts); *Lawrence v. Nat'l Fruit Product Co.*, 43 Va. Cir. 516, 1997 WL 1070444, at *6 (Cir. Ct. 1997) (recognizing that "[w]hen a way has been worked by road officials as a public road and used by the public as such," that is prima facie evidence it is a public road, but in the case before it, there was no dedication both because nothing in any deed indicated any right by the public to use the road and because the right-of-way had "never been generally maintained or officially recognized by" the city as a public road).

In this case, though, there is an *express* dedication, by virtue of the Deed conveying the easement for "highway purposes." Thus, the offer of dedication to public use was made by the Deed. In a similar case, where a deed to the government entity (Norfolk County) stated that it was being used for highway purposes, the Supreme Court of Virginia held that the deed was an offer of dedication. *City of Norfolk v. Meredith*, 132 S.E.2d 431, 435 (Va. 1963). The dedication to public use, however, would be complete "when, and only when, it is accepted by the public." *Id.* (citation omitted). The reasoning behind requiring acceptance is simple: "Because a dedication imposes the burden of maintenance and potential tort liability on the public, a dedication is not completed until the public or competent public authority manifests an intent to accept the offer." *Brown v. Moore*, 500 S.E.2d 797, 801 (Va. 1998) (citation omitted).

There are various ways that such dedication can be accepted, but mere recording of the deed is not generally sufficient. *City of Norfolk*, 132 S.E.2d at 435. Instead, acceptance of an offer of dedication may be "formal and express, as by the enactment of a resolution by the appropriate governing body, or by implication arising from an exercise of dominion by the governing authority or from long continued public use[] of requisite character." *Brown*, 500 S.E.2d at 801 (citation omitted). In *City of Norfolk*, the court concluded there was no acceptance

of the dedication, because the grantee did not follow the state requirements relating to the establishment or alteration of the roads, because the public did not treat it as a public road, and because there was no action taken by the municipality, for more than twenty-five years, "to take possession of the right of way, to improve it any way, [or] to use it for highway purposes." 132 S.E.2d at 436.

Here, by contrast, the Forest Service built the road almost immediately, asserted control over it, included it in its directory of official service forest roads, and took responsibility for maintaining it. In addition to these actions, which constituted acceptance of the offer of dedication, the public has used it since it was built, up until the time that Smith & Dew erected their own gate. Under similar circumstances, the Supreme Court of Virginia has found an offer of dedication was accepted. *See, e.g.*, *3232 Page Ave. Condominium Unit Owners Ass'n v. City of Va. Beach*, 735 S.E.2d 672, 677–78 (Va. 2012) (holding that dedication was accepted where the public used the property, the city had patrolled and maintained it for over thirty years, and the landowners and their predecessors-in-interest had not previously objected to the City's exercise of dominion and control). Under the circumstances here, then, it would be "unjust and improper" to permit the landowner to reclaim it. *See 3232 Page Ave.*, 735 S.E.2d at 676; *City of Richmond v. Stokes*, 72 Va. 713, 1879 WL 5375 (Va. 1879) ("[U]se of the property by the public, with the assent of the owner, will justify the presumption of dedication if the use has continued so long that private rights and the public convenience might be materially affected by an interruption of the enjoyment."). Thus, to the extent that the dedication cases are applicable here, the court concludes that there has been a clear offer and clear acceptance of a dedication, such that FSR 339 has been dedicated to public use.

In summary, the Easement Deed clearly contemplated access by the public by its use of the term "highway purposes." Taking away the Forest Service's ability to control public access—by forcing it to provide personnel to open and close defendants' gate each time a member of the public wants to access the National Forest in a vehicle—is thus an unreasonable burden on the dominant estate. For these reasons, defendants' second argument is also unavailing.

## F. The Gate Is Not Lawful under Virginia Code § 33.2-110(C)

Because FSR 339 is not a private road, defendants are incorrect that Virginia Code § 33.2-110(C) permits the erection of their gate. That statute provides:

> The owners of forest and timberlands may substantially obstruct or close private and seldom used roads leading to or into such forest or timberlands from the public highways of the Commonwealth at points at or near which the private roads enter their property or forestlands; and, *in all cases* where any such private road is subject to an easement for travel for the benefit of other lands not regularly and continuously inhabited, the owner of such forest or timberlands may obstruct the road with a gate, chain, cable, or other removable obstruction, lock the obstruction, and after furnishing a key to the lock to the owner or owners of the land or lands to which the forestlands are servient, require those entitled to the easement to unlock and relock such obstruction upon making use of the road.

Va. Code § 33.2-110(C).

Virginia Code § 33.2-110(C) is a statute that, by its plain terms, applies to *private* roads. Defendants claim that FSR 339 is a private road because they own it, and the Forest Service has the right to use it. They point to Virginia Code § 46.2-100, which says a private road "means every way in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons." But as discussed in the prior section, the Forest Service easement on FSR 339 allows it to provide and regulate access by the

public.   Because FSR 339 is not a private road, the statute does not provide authority for defendants' gate.[9]

### III.   CONCLUSION

For all of the foregoing reasons, the court will grant plaintiff's motion for summary judgment and enter judgment in favor of the United States.   An appropriate order will be entered.

Entered: June 4, 2018.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[9]   The United States correctly notes that the statute is inapplicable for another reason: it applies to "owners of forest and timberlands" and roads "leading to or into such lands."   Va. Code § 33.2-110(C).   Defendants are not the owners of the forest and timberlands to which FSR 339 leads, and so the statute did not provide them with authority to erect their gate.